Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

Attorney for Plaintiff,
*Zorayda Mariscal*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ZORAYDA MARISCAL,
                    Plaintiff,

        v.

APPFOLIO, INC.;

                    Defendant.

Case No.: 2:26-cv-3591

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. FCRA, 15 U.S.C. §1681 *et. seq.*
2. CCRAA, Cal. Civ. Code § 1785 *et. seq.*

        Plaintiff ZORAYDA MARISCAL ("Plaintiff"), by and through the undersigned counsel, brings this action on an individual basis, against AppFolio, Inc. ("Defendant" or "AppFolio"), for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et. seq.* arising out of Defendant's mixing Plaintiff's credit file with another consumer.

**INTRODUCTION**

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, Defendant acknowledges this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties),

commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7. Congress made the following findings when it enacted the FCRA in 1970:

    i. The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

    ii. An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

    iii. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

    iv. There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

COMPLAINT AND DEMAND FOR JURY TRIAL

8.     Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs

to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

12. A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

13. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

14. "Mixed files" create a false description and representation of a consumer's credit history.

15. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

16. Mixed files are not a new phenomenon. CRAs have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for

over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

17. Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Experian sells information pertaining to one consumer in response to the application of the other.

18. FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

19. For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages. Despite the verdict, Experian continues to mix consumers' credit files with other consumers' credit files.

20. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with

another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Experian continues to mix consumers' credit files with other consumers' credit files.

21. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes. Despite the verdict, Experian continues to mix consumers' credit files with other consumers' credit files.

22. More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020). Despite the verdict, Experian continues to mix consumers' credit files with other consumers' credit files.

23. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that

whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendant acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

24. No less than three federal Courts of Appeal have held a consumer reporting agencies violate 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when they mix a consumer's file with another consumer.

25. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

26. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

27. Plaintiff's claims arise out of the AppFolio's blatantly inaccurate credit reporting, wherein AppFolio mixed and/or merged Plaintiff's credit files with that of another consumer.

28. Accordingly, Plaintiff brings claims against AppFolio for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).

29. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendant for their willful and/or

negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

30. Plaintiff, ZORAYDA MARISCAL ("Plaintiff") is a natural person residing in Los Angeles County, California and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3(b).

31. Defendant AppFolio, Inc. is a corporation with a principal place of business located at 70 Castilian Drive, Santa Barbara, CA 93117 and can be served through its agent for service, CSC – Lawyers Inc., located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

32. AppFolio is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3(d). AppFolio is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. AppFolio is also a "reseller" – which means AppFolio is a consumer reporting agency that (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

## JURISDICTION AND VENUE

33.   This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

34.   Supplemental jurisdiction of the court arises under 28 U.S.C. § 1367 as the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

35.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS
### Summary of the Fair Credit Reporting Act

36.   The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

37.   The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their

grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

38.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 U.S.C. § 1681(b).

39.    To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

40.    The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### The "Mixed File" Problem

46.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the

major consumer reporting agencies regarding their significant failures and deficiencies with respect to mixed files.

47. Consumer reporting agencies mix files even though every consumer has unique personal identifying information, such as a Social Security number and/or ITIN.

48. A mixed or merged credit file is the result of inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit files of another consumer.

49. There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms and/or database rules used to match personal identifying information and credit information, including public record information, to a particular consumer's file.

50. The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline or public record information.

51. A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, ITIN, address, date of birth, etc.).

52. Accordingly, the database rules determine which consumer files are selected by the algorithm and merged to create a complete consumer report.

53.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

54.     To prevent the occurrence of mixed files, consumer reporting agencies have long been required to follow procedures designed to ensure that information is only placed in a consumer's file when the agency can reasonably determine that the information belongs to that consumer.

55.     Such procedures generally require that identifying information such as a consumer's name, Social Security number, date of birth, and address be used to ensure that information is matched to the correct consumer.

56.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits involving mixed files, the mixed file problem continues.

57.     Mixed files have resulted in substantial verdicts against consumer reporting agencies that failed to follow reasonable procedures to prevent the mixing of consumers' files.

58.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that

whether other consumers have lodged similar complaints is relevant to willfulness under the FCRA).

59. Moreover, repeated noncompliance with statutory duties can establish that a defendant acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

60. No less than three federal Courts of Appeal have held that a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

61. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

62. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed consumer files remain a significant problem for innocent consumers, including Plaintiff.

### AppFolio's Failure to Follow Reasonable Procedures is Known

45. AppFolio furnishes credit history, rent payment history, criminal/public records history, landlord-tenant history and other information about consumers to thousands of client property management companies to, among other things, assist the clients in selecting tenants ("Tenant Screening Reports").

46. AppFolio obtains the information for its Tenant Screening Reports from other consumer reporting agencies and public record sources and is a "reseller" as defined under 15 U.S.C. § 1681a(u).

47. The Tenant Screening Reports that AppFolio furnishes to its clients are "Consumer Reports" as defined under 15 U.S.C. § 1681a(d).

48. On or about December 8, 2020, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC") brought a complaint for civil penalties, permanent injunction and other equitable relief against AppFolio for violations of, among others, the FCRA.

49. The FTC alleged that AppFolio implemented insufficient procedures to assess the accuracy of information it obtained from other sources before including the information in Tenant Screening Reports.

50. Rather, AppFolio generally relied on the procedures of the third-party data sources for matching the information and AppFolio had limited knowledge of the procedures used by those sources.

51. AppFolio entered into a settlement with the FTC and agreed to pay $4.25 million over the allegations that it failed to follow reasonable procedures to ensure the accuracy of its reports about potential tenants.

52. As such, AppFolio has been on notice that its procedures are insufficient and that it was required to do more to ensure the accuracy of information it obtains from other sources about consumers when preparing Tenant Screening Reports.

53. However, AppFolio has continued its pattern and practice of generally relying on third-party sources for the matching of information without implementing any reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

**Plaintiff's Inaccurate Tenant Screening Report**

64. In or around February 2026, Plaintiff applied for rental housing and was subjected to a Tenant Screening Report prepared by AppFolio.

65. AppFolio prepared a Tenant Screening Report about Plaintiff and provided it to a prospective landlord in connection with Plaintiff's rental application.

66. The Tenant Screening Report included an eviction record with a judgment from an apartment located in Houston, Texas.

67. The eviction and judgment reported by AppFolio do not belong to Plaintiff.

68. Plaintiff has never lived in Texas, has never been to Texas, and does not know anyone associated with the eviction referenced in the Tenant Screening Report.

69. Upon information and belief, the eviction record reported by AppFolio belongs to a different consumer.

70. As such, upon information and belief, AppFolio mixed Plaintiff's file with that of another consumer.

72. Upon information and belief, AppFolio does not have reasonable procedures in place to ensure that the public record information it includes in its Tenant Screening Reports relates to the correct consumer.

73. Plaintiff's rental application was denied.

74. The eviction and judgment reported by AppFolio was the reason for the denial.

75. AppFolio's reporting was patently false and/or materially misleading, as Plaintiff was never involved in the eviction proceeding reported on the Tenant Screening Report.

76. At all times pertinent hereto, AppFolio was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of AppFolio.

77. At all times pertinent hereto, AppFolio's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

78. AppFolio is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, AppFolio's violations of the FCRA are willful.

79. As a result of AppFolio's conduct, action, and inaction, Plaintiff suffered damages including but not limited to the loss of housing opportunity, damage to reputation, emotional distress including mental and emotional pain, anguish, humiliation, and embarrassment resulting from being falsely associated with another consumer's eviction and judgment.

### COUNT I
**Defendant AppFolio**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

80.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

81.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.
> 15 U.S.C. §1681e(b) (emphasis added).

82.    On at least one occasion, Defendant prepared patently a false consumer report concerning Plaintiff.

83.    Defendant mixed another consumer's information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

84.    Defendant did not "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S. Code § 1681e(b)

85.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintained concerning Plaintiff.

86.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, rental denial, the damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of a credit denial and having another consumer's derogatory information included into Plaintiff's credit files.

87.    Defendant's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**Count II**
**Defendant AppFolio**
**(Violations of the Consumer Credit Reporting Agencies Act,**

**Cal. Civ. Code § 1785 *et seq.*)**

89.   Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

90.   The Defendant violated the CCRAA. The Defendant's violations include, but are not limited to, the following:

91.   Defendant violated Cal. Civ. Code § 1788.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

92.   The Defendant's acts, as described above, were done willfully and knowingly.

93.   Consequently, the Defendant is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the CCRAA;

B. Actual damages against Defendants pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(a)(2)(A);

COMPLAINT AND DEMAND FOR JURY TRIAL

C. Punitive damages of $5,000.00 per violation against Defendants pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(2)(B);

D. Costs and attorney's fees against Defendants pursuant to CCRAA, Cal. Civ. Code § 1785.31(a)(1);

E. Declaratory judgment that Defendant violated the FCRA;

F. Actual damages against Defendants pursuant to the FCRA, 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1681o(a)(1);

G. Statutory damages against Defendants pursuant to FCRA, 15 U.S.C. § 1681n(a)(1)(A);

H. Punitive damages against Defendants pursuant to FCRA, 15 U.S.C. § 1681n(a)(2);

I. Costs and attorney's fees against Defendants pursuant to FCRA, 15 U.S.C. § 1681o(a)(2);

J. Punitive damages to be determined at trial, for the sake of example and punishing Defendants for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

K. Awarding Plaintiff any pre-judgment and post judgment interest as may be allowed under the law; and

L. Any other relief that this Court may deem appropriate.

Respectfully submitted this on April 3, 2026.

COMPLAINT AND DEMAND FOR JURY TRIAL

*/s/ Youssef H. Hammoud*
Youssef H. Hammoud (SBN: 321934)
**THE CREDIT ATTORNEY, INC.**
601 N Parkcenter Drive Suite 202
Santa Ana, CA 92705
T: (949) 301-9692
F: (949) 301-9693
E: yhammoud@thecreditattorney.com

*Attorney for Plaintiff,*
*Zorayda Mariscal*

COMPLAINT AND DEMAND FOR JURY TRIAL